UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                         Case No. 14-12353-BPC
                                                              Chapter 7
LENORA JACK DEEMER,

　　　Debtor.

## MEMORANUDM OPINION

This matter is before the Court on Debtor's Amended Motion for Contempt and Motion for Sanctions for Violation of Discharge Injunction (Doc. 48) filed against NCEP, LLC.[1] The Court, having reviewed the pleadings, briefs, and counsels' arguments, holds the Amended Motion for Contempt and Motion for Sanctions is GRANTED in part and DENIED in part.

**I.   JURISDICTION**

This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b); *In re McLean*, 794 F.3d 1313, 1318-19 (11th Cir. 2015). Furthermore, this Court may hear and adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This is a final order.

**II.  FACTS**

Lenora Jack Deemer ("Debtor") filed a voluntary petition under Chapter 13, Title 11, United States Code on November 18, 2014 (Doc. 1). Debtor's plan proposed to pay Santander Consumer USA ("Santander") for a 2005 Nissan Altima valued at $6,900.00 (Doc. 2). On December 2, 2014, Santander filed a Proof of Claim in the amount of $8,494.62 (Claim 5-1). The claim was subsequently transferred to NCEP, LLC ("NCEP") on June 2, 2015 (Doc. 23). On August 10, 2017, Debtor filed her Notice of Conversion to Chapter 7 and expressed her intention

---

[1] Debtor also alleged violation of the discharge injunction by Santander Consumer USA, Inc. ("Santander"). However, at the hearing on January 17, 2019, Debtor orally dismissed the claims against Santander with prejudice and an Order to that effect was entered on March 4, 2019 (Doc. 57).

to surrender the inoperable 2005 Nissan Altima (Doc. 27). The discharge order entered on November 28, 2017 (Doc. 40). Neither Santander nor NCEP ever repossessed the collateral. On November 29, 2018, this Court entered an Order (Doc. 44) granting Debtor's Motion to Reopen (Doc. 43). Debtor filed the Motion for Contempt (Doc. 46) on December 3, 2018, which was subsequently amended (Doc. 48) on December 5, 2018 to include a request for sanctions. The matter came on for hearing on January 17, 2019, and the Court allowed additional time for the parties to file briefs regarding whether NCEP's actions (and/or inactions) effectively coerced Debtor in violation of the discharge injunction. NCEP filed its brief on February 15, 2019 (Doc. 55), and Debtor filed her brief on February 18, 2019 (Doc. 56).

### III. CONCLUSIONS OF LAW

Debtor seeks enforcement of this Court's discharge order entered on November 28, 2017 and asks the Court hold NCEP in contempt and impose sanctions for violating the injunction.

#### A. Contempt -- Violation of Discharge Injunction

Debtor asserts NCEP "violated the discharge injunction of 11 U.S.C. § 524(a) by engaging in acts which coerced or had the effect of coercing Debtor into remitting money to NCEP in payment of an obligation upon which Debtor's *in personam* liability had been extinguished" through the discharge order. (Doc. 56). Section 524 of the Bankruptcy Code imposes a post-discharge injunction against the collection of debts discharged in bankruptcy. *In re Hardy*, 97 F.3d 1384, 1388-89 (11th Cir. 1996). The Code provides in relevant part:

> (a) A discharge in a case under this title –
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; ….

11 U.S.C. § 524(a)(2). The moving party bears the burden of proving by clear and convincing evidence that a court order has been violated. *In re McLean*, 794 F.3d at 1326.

In a recent Supreme Court decision, the Court held a creditor may be held in civil contempt for violating a discharge injunction if there is no fair ground of doubt as to whether the discharge order barred the creditor's conduct. *Taggart v. Lorenzen*, 2019 WL 2331303 * 2, __ S. Ct. __ (2019). The Court held § 524 and § 105 of the Bankruptcy Code "authorize[] a court to impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Id.* at * 3. This is an objective test. *Id.* at * 6. *Cf. In re McLean*, 794 F.3d at 1322 ("[T]he test for whether a creditor violates the discharge injunction under 11 U.S.C. § 524(a)(2) is whether the objective effect of the creditor's action is to pressure a debtor to repay a discharged debt.").

Debtor asserts NCEP's failure to timely repossess the vehicle or release the title effectively coerced Debtor into repaying the discharged debt – in violation of the discharge injunction. In support, Debtor relies on the First Circuit decision of *In re Pratt*, 462 F.3d 14 (1st Cir. 2006). In *In re Pratt*, the debtor proposed to surrender her inoperable vehicle in lieu of reaffirming or redeeming the loan. *Id.* at 16. The creditor determined the vehicle was not worth repossessing and wrote off the loan balance, but failed to release the title to the debtor. *Id.* Despite multiple attempts to obtain the title from the creditor in order to dispose of the vehicle, the creditor refused to release the lien without full payment of the loan balance. *Id.* The *Pratt* Court determined the creditor's actions were objectively coercive. *Id.* at 19. The creditor did not intend to repossess the vehicle because its value was insufficient. *Id.* The creditor conditioned the release of the lien on the debtor's agreement to repay the discharged debt. *Id.* Also, because state law required a title to junk a vehicle, the debtor was being forced to retain a worthless vehicle indefinitely. *Id.* This

effectively eliminated debtor's surrender option. *Id.* at 20. Therefore, the court in *Pratt* held the creditor's failure to repossess the surrendered vehicle or release the lien was objectively coercive. *Id.* at 19. *See In re Riddering*, 2010 Bankr. LEXIS 2962 *2 (Bankr. M.D. Fla. 2010) ("A creditor 'coerces' or 'harasses' a debtor when it fails to either repossess or cancel the lien on an inoperable vehicle, essentially leaving the debtor with no option to get rid of the vehicle without repaying the debt."); s*ee also In re Maddox*, 530 B.R. 889, 893-94 (Bankr. M.D. Ala. 2015) (analogizing cases involving creditors with security interests in vehicles not worth repossessing).

The facts of the present case are analogous to those of *In re Pratt*. Debtor surrendered her vehicle in 2017 and NCEP was promptly notified of the surrender (Doc. 27). Three months later, the discharge order entered and NCEP was notified of the discharge (Doc. 40). The Order of Discharge states as follows: "This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, ***or otherwise try to collect from the debtors personally on discharged debts***." *Id.* (emphasis added). At the hearing, Debtor testified the vehicle was inoperable, and she contacted NCEP multiple times requesting it repossess the vehicle. According to Debtor's testimony, on at least one occasion, NCEP informed Debtor it would release the title to the vehicle in exchange for $750. Debtor contends this exchange with NCEP was an attempt to coerce the Debtor to repay the discharged debt in violation of the discharge injunction. Additionally, Debtor testified that because she was unable to dispose of the vehicle without the title, she further felt coerced into paying NCEP after their conversation – even though Debtor never actually remitted payment.

Similar to the *Pratt* Court, this Court finds NCEP's failure to either repossess the surrendered vehicle or release the lien was objectively coercive and, therefore, was a violation of

the discharge injunction. The Court finds no objectively reasonable basis for concluding that the conduct of NCEP might be lawful given the specific language of the Order of Discharge, and NCEP's failure to repossess the surrendered vehicle or release the lien for over a year. The delay caused by NCEP, along with is request for payment of $750 in exchange for the vehicle's title, effectively eliminated Debtor's surrender option and forced Debtor to retain possession of an inoperable vehicle. Accordingly, at the time Debtor filed the motion before the Court, NCEP was in contempt of the Court's discharge order.

While NCEP relies on *Canning v. Beneficial Main, Inc.*, 462 B.R. 258 (1st Cir. 2011) for the principle that where the collateral has value a creditor's decision to enforce its rights in the collateral can be used to explain its actions, NCEP put on no evidence at the hearing regarding the value of the vehicle or NCEP's intentions when offering to release the title for $750. However, what the evidence before the Court does show is that following the filing of this Motion for Contempt, on or about December 14, 2018, Debtor received a letter from NCEP which included the title to the surrendered 2005 Nissan Altima. Thus, based on the pleadings of record, the evidence presented, and Debtor's testimony, the Court finds NCEP was in contempt of the Court's discharge order by failing to either timely repossess the vehicle or cancel the lien. It was not until after the filing of the Motion for Contempt and Sanctions by the Debtor that NCEP sufficiently purged itself of its contempt by mailing the original certificate of title to Debtor to allow her to dispose of the collateral. The issue then becomes what, if any, damages should be imposed against NCEP.

B.     **Sanctions/Damages**

Before assessing any monetary damages, the Court addresses its authority to impose sanctions. The request for the imposition of sanctions against NCEP was brought before the Court

in the form of a contempt action. Section 524 does not explicitly authorize monetary damages for a violation of the discharge injunction; instead, a court may rely on its statutory contempt powers set forth in 11 U.S.C. § 105. *In re Hardy*, 97 F.3d at 1389-90.[2] "Congress has empowered bankruptcy courts broadly to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of' the Bankruptcy Code, *11 U.S.C. § 105(a)*, including sanctions to enforce the discharge injunction." *In re McLean*, 794 F.3d at 1319 (quoting *In re Hardy*, 97 F.3d at 1390).

"Sanctions in civil contempt proceedings may be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *In re McLean*, 794 F.3d at 1323 (citations omitted); *see Int'l Union, United mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994) (noting civil contempt sanctions are intended to remediate and are "for the benefit of the complainant"). For sanctions to be considered coercive, the sole purpose of imposing the sanction is to bring an end to the contempt. *In re McLean*, 794 F.3d at 1323. Since NCEP has sufficiently purged itself of its contempt by releasing the title to Debtor, any damages imposed by the Court must be to compensate Debtor for her losses.

---

[2] While all courts (including bankruptcy courts) have inherent contempt powers that are separate and apart from the statutory contempt powers set forth in § 105, courts are cautioned to exercise restraint and discretion in utilizing their inherent powers. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *see also In re McLean*, 794 F.3d at 1319 (recognizing the court "need not rely on the bankruptcy court's inherent powers to find jurisdiction because bankruptcy courts also possess a statutory contempt power"); *In re Hardy*, 97 F.3d at 1389 (noting the court will exercise caution and rely on the statutory contempt powers under § 105 rather invoking its inherent contempt powers); *In re Jove Eng'g, Inc.*, 92 F.3d 1539, 1543 (11th Cir. 1996)(holding "§ 105 creates a statutory contempt power in bankruptcy proceedings distinct from the court's inherent contempt powers"). This Court will likewise follow suit and exercise restraint in utilizing its inherent powers, and will, instead rely on the statutory contempt powers established under § 105.

Debtor seeks $4,160 in compensatory damages plus $1,917.50 in attorney fees and costs and $8,320 in punitive damages, for a total damages award of $14,397.50. The Court will analyze each damages request separately.

 1. **Compensatory Damages**

Debtor seeks compensatory damages for the violation of the discharge injunction. A court may impose contempt sanctions for actual damages and attorney fees and costs. *In re Hardy*, 97 F.3d at 1390. *See In re Plummer*, 513 B.R. 135, 148 (Bankr. M.D. Fla. 2014) ("Actual damages are limited to reasonable attorney fees, costs, and lost wages the [d]ebtors incurred in enforcing their discharge.").

 a. **Out-of-pocket Expenses**

At the hearing, Debtor's counsel suggested an award of $4,160 in compensatory damages (excluding attorney fees and costs). Debtor's counsel represented to the Court that he arrived at this figure by price-checking vehicle storage fees in the area, which allegedly range from $40 to $80 per day, and then arbitrarily choosing the amount of $10 per day as a reasonable storage fee amount. Debtor's counsel multiplied $10 by 416, which represents the number of days that lapsed from the date of discharge (November 28, 2017) to the hearing date (January 17, 2019). However, Debtor's counsel presented no evidence regarding the storage fee amounts to form the basis for the damages award. But, more importantly, Debtor failed to demonstrate she suffered any out-of-pocket loss from maintaining possession of the vehicle.

In fact, Debtor's counsel admitted at the hearing on the motion that there were no out-of-pocket expenses, other than expenses associated with Debtor taking time off work to be in court and travel. Unfortunately, Debtor's counsel failed to elicit any testimony from Debtor regarding Debtor's hourly rate of pay, the number of hours Debtor missed from work to prepare for and

attend the hearing, and cost of mileage. Finally, while Debtor testified that NCEP offered to release the title in exchange for $750 and that she felt coerced to pay the $750, Debtor admitted she never remitted payment to NCEP. Accordingly, Debtor has not shown she suffered any out-of-pocket loss caused by NCEP's delay.

### b. Emotional Distress Damages

Debtor also seeks damages for emotional distress she claims she suffered by NCEP's failure to repossess the vehicle. Under § 105, bankruptcy courts may impose damages for emotional distress caused by a creditor's violation of a discharge injunction. *In re McLean*, 794 F.3d at 1325; *see In re Wassem*, 456 B.R. 566, 572 (Bankr. M.D. Fla. 2009) (noting damages for emotional distress are actual damages). In order to support an award for emotional distress damages, the Debtor must (1) show she suffered significant emotional distress, (2) clearly establish the significant emotional distress, and (3) demonstrate a causal connection between that significant emotional distress and the violation of the discharge injunction. *In re McLean*, 794 F.3d at 1325-26 citing *Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263, 1271 (11th Cir. 2014). The emotional distress suffered must be significant rather than trivial anxiety or distress. *In re Dawson*, 390 F.3d 1139, 1149 (9th Cir. 2004) (noting that emotional distress may be established by corroborating medical evidence, by non-expert testimony of family or friends, or may be readily apparent).

Debtor testified that she is "tired of the car", that she has a two-car garage and must "go around" the vehicle to get into the garage, and that she is embarrassed by the vehicle being in her yard because she does not own her home. Debtor offered no other evidence to support her claims of emotional distress. Debtor did not provide any medical evidence or offer additional testimony to support her claims. While the Court is sympathetic to the annoyance the vehicle has posed Debtor, it is not readily apparent to the Court that Debtor experienced significant emotional distress

as a result of NCEP's actions. Accordingly, Debtor failed to lay the groundwork to support a damages award for emotional distress and the Court will refrain from awarding damages for any unfounded claims.

      c.      **Attorney Fees and Costs**

In addition to actual damages, Debtor has requested an award of attorney fees in the amount of $1,917.50. "[F]ees and expenses actually caused by a violation of the discharge injunction are assessable as a sanction therefor." *In re Riser*, 298 B.R. 469, 473 (Bankr. M.D. Fla. 2003). While Debtor's counsel failed to provide a breakdown of the time he expended, he represented to the Court that he billed his time at an hourly rate of $325 per hour. Although not provided by Debtor's counsel, a quick calculation shows Debtor's counsel billed 5.9 hours in prosecuting this contempt action.

Prior to assessing any attorney fees, the Court must determine whether the hourly rate of $325 is reasonable. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *In re Riser*, 298 B.R. at 473 citing *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984). The party seeking to establish the reasonableness of the hourly rate bears the burden of showing the requested rate conforms to the prevailing market rate. *In re Riser*, 298 B.R. at 473 citing *NAACP v. City of Evergreen*, 812 F.2d 1332, 1338 (11th Cir. 1987). Even though Debtor's counsel failed to provide an affidavit or a detailed billing statement outlining the amount of time expended or the rate of pay, counsel for NCEP did not dispute the $1,917.50 requested by Debtor's counsel or the reasonableness of $325 as an hourly rate. *See Tollett v. City of Kemah*, 285 F.3d 357, 369 (5th Cir. 2002) (approving the requested hourly rate because it was not questioned by opposing party and debtor's counsel had provided an affidavit in support).

Accordingly, in the present case, the Court finds $325 per hour is a reasonable hourly rate for Debtor's counsel's services.[3]

While the Court does not look favorably on awarding attorney fees and costs to Debtor's counsel when Debtor is not being compensated, the Court finds Debtor has been made whole by receiving the original title. Because Debtor has received the title to the vehicle, she is now able to dispose of the vehicle in any manner she desires. The Court recognizes the role the Debtor's counsel played in NCEP releasing the title to Debtor to allow her to dispose of the vehicle. In fact, the Court suspects that, but for Debtor filing this contempt action, NCEP would not have released the title to Debtor. Accordingly, the Court will award attorney fees and costs of $1,917.50.

**2. Punitive Damages**

In addition to compensatory damages, Debtor seeks an award of $8,320 in punitive damages for NCEP's willful violation of the discharge injunction. Debtor's counsel arrived at this amount by again selecting an arbitrary amount of $20 per day for the basis of the calculation. Debtor's counsel multiplied this $20 per day amount by 416 days to come up with the proposed $8,320 in punitive damages award.

In characterizing the nature of the sanctions, the court must determine "(1) whether the award directly serves the complainant rather than the public interest and (2) whether the contemnor may control the extent of the award." *In re McLean*, 794 F.3d at 1323 (citations omitted). "Punitive sanctions…take the form of a fixed fine and have no practical purpose other than punishment." *Id*. Because punitive sanctions are for offenses already completed, they take on the character of criminal punishment and render the contempt criminal in nature, which requires more stringent

---

[3] The Court declines to hold $325 is a reasonable hourly rate for all contempt cases and would urge Debtor's counsel to be more diligent in establishing the reasonableness of a requested fee in the future.

due process protections. *In re McLean*, 794 at 1323-25; s*ee In re Hardy*, 97 F.3d at 1390 (noting sanctions that take the form of a fixed fine are punitive damages that cannot be imposed).

Because NCEP has purged itself of its contempt by releasing the title to Debtor, any sanctions imposed would be punitive rather than coercive. In fact, Debtor's counsel specifically requested the imposition of the $8,320 in punitive damages to be assessed against NCEP for "blatantly violating the discharge injunction." This amount was clearly requested by Debtor's counsel as punishment. While NCEP refused to either repossess the vehicle or release the title to the vehicle following the entry of the discharge injunction and requested payment from Debtor before releasing the title, the Court does recognize the immediate steps NCEP took to remediate its contempt once the present motion was filed. The contempt motion was filed on December 3, 2018 and NCEP mailed the original title to Debtor on or around December 14, 2018. As such, the Court will refrain from imposing punitive sanctions against NCEP. However, the Court would caution NCEP to review its practices with regard to surrendered vehicles to ensure it is compliant with future discharge injunctions.

## IV. CONCLUSION

When Debtor filed the Motion for Contempt and Sanctions, NCEP was in contempt of this Court's discharge injunction for its failure to either timely repossess the surrendered vehicle or release the title. However, since the filing of this motion, NCEP purged itself of its contempt by mailing the original title to Debtor. Once NCEP became compliant with the discharge injunction, it was no longer in contempt. Debtor did not suffer any damages from the discharge violation and the Court declines to impose punitive sanctions. However, the Court will award Debtor attorney fees and costs in the amount of $1,917.50. Accordingly, the Motion for Contempt and Sanctions

is GRANTED in part and DENIED in part. The Court will enter an Order by way of a separate document.

       Done this 17th day of June, 2019.

*[signature: Bess M. Parrish Creswell]*

       Bess M. Parrish Creswell
       United States Bankruptcy Judge

c: Debtor
   Michael Brock, Attorney for Debtor
   Anthony Bush, Special Counsel
   William C. Poole, Attorney for NCEP, LLC
   NCEP, LLC, Creditor